**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| ELMITA R. VILLELA and CRISTAL M. VERA, | § § § | Case No.: 1:21-cv-100 |
| *Plaintiffs,* | § § | JURY TRIAL DEMANDED |
| vs. | § § | |
| RCI HOSPITALITY HOLDINGS, INC., JAI DINING SERVICES (HARLINGEN), INC dba JAGUARS; and ERIC S. LANGAN, | § § § § | |
| *Defendants.* | § § § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

Plaintiffs ELMITA R. VILLELA, ("Plaintiff Villela") and CRISTAL M. VERA, ("Plaintiff Vera"), individually and on behalf of all others similarly situated, allege the following upon information and belief, based upon investigation ofcounsel, published reports, and personal knowledge:

I.    **NATURE OF THE ACTION**

1.    Plaintiff alleges causes of action against Defendants RCI HOSPITALITY HOLDINGS, INC., JAI DINING SERVICES (HARLINGEN), INC. d/b/a JAGUARS, and ERIC S. LANGAN, ("Defendants") for damages resulting from Defendants evading the mandatory minimum wage and overtime provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*("FLSA") and illegally absconding with Plaintiffs tips.

2.    Defendants own and operate a strip club named Jaguars in Harlingen. These causes of action arise from Defendants' willful actions while Plaintiff Villela was employed by Defendants from approximately February 20, 2018  through October 31, 2019 and while Plaintiff Vera was employed by Defendant from approximately 2011  through October 1, 2019.

Throughout their employment with Defendants, Plaintiffs have been denied minimum wage payments and denied overtime as part of Defendants scheme to classify Plaintiffs and other dancers/entertainers as "independent contractors." As the Department of Labor explained in a recent Administrative Interpretation:

> Misclassification of employees as independent contractors is found in an increasing number of workplaces in the United States, in part reflecting larger restructuring of business organizations. When employersimproperly classify employees as independent contractors, the employees may not receive important workplace protections such as the minimum wage, overtime compensation, unemployment insurance, and workers' compensation. Misclassification also results in lower tax revenues for government and an uneven playing field for employers who properly classify their workers. Although independent contracting relationships can be advantageous for workers and businesses, some employees maybe intentionally misclassified as a means to cut costs and avoid compliancewith labor laws.[1]

As alleged in more detail below, that is exactly what the Defendant is doing in this case.

3.      Plaintiffs worked at Defendants' principal place of business located at 14286 West Expressway 83, Harlingen, Texas 78552.

4.      Defendants failed to pay Plaintiffs minimum wages and overtime wages for all hours worked in violation of 29 U.S.C. §§ 206 and 207 of the FLSA.

5.      Defendants' conduct violates the FLSA, which requires non-exempt employees to be compensated for their overtime work at a rate of one and one-half (1 ½) times their regularrate of pay. *See* 29 U.S.C. § 207(a).

6.      Furthermore, Defendants' practice of failing to pay tipped employees pursuant to 29 U.S.C. § 203(m), violates the FLSA's minimum wage provision. *See* 29 U.S.C. § 206.

7.      Plaintiffs bring a collective action to recover the unpaid overtime compensation and minimum wage owed to them individually and on behalf of all other similarly situated

---

[1] *See* DOL Admin. Interp. No. 2015-1, available at http://www.dol.gov/whd/workers/Misclassification/AI- 2015_1.pdf

employees, current and former, of Defendants. Members of the Collective Action are hereinafter referred to as "FLSA Class Members."

8.     As a result of Defendants' violations, Plaintiffs and the FLSA Class Members seek to recover double damages for failure to pay minimum wage, overtime liquidated damages, interest, and attorneys' fees.

## II.  **PARTIES**

9.     Plaintiffs are individual adult residents of the State of Texas. Furthermore, Plaintiffs were employed by Defendants and qualifies as an "employee" of Defendants as defined by the FLSA, 29 U.S.C. § 203(e)(1).

10.    The FLSA Class Members are all current and former exotic dancers who worked at JAGUARS San Antonio at any time starting three (3) years before this Complaint was filed, up to the present.

11.    Defendant JAI DINING SERVICES (HARLINGEN), INC. DBA JAGUARS ("Jaguars" or the "Club") is a Texas corporation with its principal address located at 10737 Cutten Road, Houston, Texas 77066.  At all times mentioned herein, Jaguars was an "employer" or "joint employer" as defined by the FLSA, 29 U.S.C. § 203(d) and (g). Jaguars' may be served via its agent for service of process, Robert D. Axelrod at 5300 Memorial Dr., Suite 1000, Houston, TX 77007.

12.    Defendant RCI HOSPITALITY HOLDINGS, INC. ("RCI") is a Texas corporation with its principal address located at 10737 Cutten Rd., Houston, TX 77066.  At all times mentioned herein, RCI was an "employer" or "joint employer" as defined by the FLSA, 29 U.S.C. § 203(d) and (g). RCI is the owner/parent company of Jaguars, and therefore controls and participates in the functions of Jaguars and its management of the Club. RCI may be served via

its agent for service of process, Robert D. Axelrod at 5300 Memorial Dr., Suite 1000, Houston, TX 77007.

13.    Defendant ERIC S. LANGAN ("Langan") is the President of Jaguars who executed policies regarding payment to dancers and management of dancers and/or was responsible for determining whether Jaguars complied with the FLSA.  This defendant may be served at 5404 Pine Street, Bellaire, TX 77401, or anywhere he may be found.

14.    RCI and LANGAN acted directly or indirectly on behalf of the Club, and, at all times mentioned herein was an "employer" or "joint employer" of Plaintiffs within the meaning of the FLSA. They exerted operational and management control over Defendants, including day to day management.  LANGAN was and is, frequently present at, owned, directed, controlled and managed the operations at the Club.  RCI and LANGAN also controlled the nature, pay structure, and employment relationship of Plaintiff and the FLSA Class Members. RCI and LANGAN had, at all times relevant to this lawsuit, the authority to hire and fire employees of the Club, the authority to direct and supervise the work of employees, the authority to sign on the business' checking accounts, including payroll accounts, and the authority to make decisions regarding employee compensation and  capital expenditures. Additionally, they were responsible for the day-to-day affairs of the Club. In particular, RCI and LANGAN were responsible for determining whether the Club complied with the FLSA.

15.     At all material times, Defendants have been an enterprise in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(r)(1) of the FLSA because they have had employees at their Club engaged in commerce, which has travelled in interstate commerce. Moreover, because of Defendants' interrelated activities, they function in interstate commerce. 29 U.S.C. § 203(s)(1).

16.    Furthermore, Defendants have had, and continue to have, an annual gross business

volume in excess of the statutory standard.

17.     At all material times during the three (3) years prior to the filing of this action, Defendants categorized all dancers/entertainers employed by Defendants as "independent contractors" and have failed and refused to pay wages or compensation to such dancers/entertainers. Plaintiffs were individual employees who engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

18.     Plaintiffs are informed and believe that, at all relevant times herein, Defendants engaged in the acts alleged herein and/or condoned, permitted, authorized, and/or ratified the conduct of its employees and agents, and other Defendants and are vicariously or strictly liable for the wrongful conduct of its employees and agents as alleged herein.

19.     Plaintiffs are informed and believe, and on that basis alleges that, each of the Defendants acted, in all respects pertinent to this action, as the agent or employee of each other, and carried out a joint scheme, business plan, or policy in all respect thereto and, therefore, the acts of each of these Defendants are legally attributable to the other Defendants, and that these Defendants, in all respects, acted as employers and/or joint employers of Plaintiffs in that each of them exercised control over their wage payments and control over their duties.

20.  Plaintiffs are informed and believe, and on that basis alleges that, at all relevant times, each and every Defendant has been the agent, employee, representative, servant, master, employer, owner, agent, joint venture, and alter ego of each of the other and each was acting within the course and scope of his or her ownership, agency, service, joint venture and employment.

21.     At all times mentioned herein, each and every Defendant was the successor of the other and each assumes the responsibility for the acts and omissions of all other Defendant.

### III.   VENUE AND JURSIDICTION

22.   This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 because this action arises under the FLSA, 29 U.S.C. §§ 201, *et seq*.

23.   Venue is proper in this District because all or a substantial portion of the events forming the basis of this action occurred in this District. Defendants' Club is located in this District and Plaintiffs worked in this District.

### IV.   ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### (AGAINST ALL DEFENDANTS)

### A.   FACTUAL ALLEGATIONS

24.   Defendant operates an adult-oriented entertainment facility located at 14286 West Expressway 83, Harlingen, Texas 78552. The picture below depicts the outside of the Club.



25.   At all times mentioned herein, Defendants were "employer(s)" or "joint employer(s)"

of Plaintiff.

26.     At all times during the three (3) years prior to the filing of the instant action, Defendants categorized all dancers/entertainers employed by Defendants as "independent contractors" and have failed and refused to pay wages to such dancers.

27.     At all times relevant to this action, Defendants exercised a great deal of operational and management control over the subject Club, particularly in the areas of terms and conditions of employment applicable to dancers and entertainers.

28.     Plaintiff Villela began working as a dancer for Defendants on or about February 20, 2018 through October 31, 2019.

29.     Plaintiff Vera began working as a dancer for Defendants on or about 2011 through October 1, 2019.

30.     The primary duty of an entertainer is to dance and entertain customers and give them a good experience. Specifically, an entertainer performs stage and table dances, and entertains customers on an hourly basis.

31.     Stated differently, entertainers dance on stage, perform table dances, and entertain customers in VIP rooms, all while nude or semi-nude.

32.     Plaintiffs worked and performed at the adult-oriented entertainment facility multiple shifts per week. Plaintiffs were integral parts of Defendants' business which operated solely as an adult-oriented entertainment facility featuring nude or semi-nude female entertainers.

33.     Defendants did not pay entertainers on an hourly basis.

34.     Defendants exercised significant control over Plaintiffs during her shifts, and Defendants required Plaintiffs to work an entire shift.

35.     Defendants set prices for all VIP performances.

36.     Defendants charge the dancers a late fee if they do not arrive for a shift on time.

37.     Defendants controlled the means and manner in which Plaintiffs could perform.

38.     Defendants had the authority to suspend, fine, fire, or otherwise discipline entertainers for non-compliance with their rules regarding dancing.

39.     Defendants actually suspended, fined, fired, or otherwise disciplined entertainers for non-compliance with their rules regarding dancing.

40.     Although Defendants allowed entertainers to choose their own costumes, Defendants reserved the right to decide what a particular entertainer was allowed to wear on the premises. In order to comply with the Club's dress and appearance standards, Plaintiffs typically expended approximately thirty (30) minutes of time each shift getting ready for work without being paid any wages for such time getting ready. Defendants did enforce the dress code on the entertainers, to the extent such may have been required as a sexually oriented business by the City of Harlingen and/or State of Texas.

41.     Plaintiffs were compensated exclusively through tips from Defendants' customers. That is, Defendants did not pay Plaintiffs whatsoever for any hours worked at their establishment.

42.     Defendants also required Plaintiffs to share their tips with Defendants, other non-service employees who do not customarily receive tips, including the managers, disc jockeys, and the house mother. Defendants required Plaintiff and other entertainers to tip out the floor men and DJs at least $20.00 each, as well as other non-entertainers who the entertainers interacted with at the Club.

43.     Defendants are in violation of the FLSA's tipped-employee compensation provision, 29 U.S.C. § 203(m), which requires employers to pay a tipped employee a minimum of $2.13 per hour. Defendants also violated 29 U.S.C. § 203(m) when they failed to notify the Plaintiffs about the tip credit allowance (including the amount to be credited) before the credit

was utilized. That is, Defendants' exotic dancers were never made aware of how the tip credit allowance worked or what the amounts to be credited were. Furthermore, Defendants violated 29 U.S.C. § 203(m) because they did not allow Plaintiffs to retain all of their tips and instead required that they divide their tips amongst other employees who do not customarily and regularly receive tips. Because Defendants violated the tip-pool law, Defendants loses the right to take a credit toward minimum wage.

44.     Defendants exercised significant control over Plaintiffs and all of its entertainers through written and unwritten policies and procedures. Defendants fined entertainers for failing to comply with management's rules, including late fees added on for every hour an entertainer showed up, changing before getting permission to change at the end of a shift, and a fee to leave early. The Club controlled how the entertainers dressed, including that each entertainer must wear dance heels at all times they were on the floor or stage. Plaintiffs, and similarly situated entertainers, had to sign in each shift, check in with the DJ and participate in stage rotation and needed permission to leave at the end of a shift.

45.  Defendants required Plaintiffs and other entertainers at the Club to pay in order to work.  Defendants required entertainers to pay between $30-$100 in house fees to the Club in order to work each shift.

46.  Defendants provided and paid for all advertising and marketing efforts undertaken on behalf of Defendants.

47.     Defendants paid for the building used by Defendants' maintenance of the facility, the sound system, stages, lights, beverages and inventory used at the facility.

48.     Defendants made all hiring decisions regarding wait staff, security, entertainers, managerial and all other employees on the premises.

49.     Defendants' opportunity for profit and loss far exceeded Plaintiffs' opportunity for

profit and loss from work at the Club.

50.     Nude dancing is an integral part of Defendants' operations. Defendants' advertising prominently displays nude dancing for its customers. The Club is well known as a "strip club."

51.     Defendants need entertainers to successfully and profitably operate their business model.

52.     The position of entertainer requires no managerial skill of others.

53.     The position of entertainer requires little other skill or education, formal or otherwise.

54.     The only requirements to become an entertainer at are "physical attributes" and the ability to dance seductively. The amount of skill required is more akin to an employment position than that of a typical independent contractor. Defendants do not require prior experience as an entertainer or any formal dance training as a job condition or prerequisite to employment. Defendants do not require an audition or any try-out process or provide any on-the-job training. Defendants do not require the submission of a resume or any educational background as a required to be hired. If Plaintiff or any other potential entertainer wants to perform, they just need to comply with the legal requires of the city of Harlingen and State of Texas.

55.     Defendants failed to maintain records of wages, fines, fees, tips and gratuities and/or service charges paid or received by entertainers.

56.     Plaintiffs were not paid an hourly minimum wage or *any* hourly wage or salary despite being present at Defendants' facility and required to work and entertain its customers at any time during a seven-plus (7+) hour work shift.

57.     Plaintiffs were not paid overtime wages at one-and-a-half (1½) times the regular minimum wage rate for *any* hours worked despite being present at Defendants' facility and

required to work and entertain its customers for longer than eight (8) hours per shift.

58.    The FLSA Class Members had the same pay structure and were under the same controls as Plaintiffs.

59.    Plaintiffs and FLSA Class Members would work over forty (40) hours in some weeks each worked for Defendants.

60.    Defendants have never paid Plaintiffs and the FLSA Class Members any amount as wages whatsoever and have instead unlawfully required Plaintiffs and FLSA Class Members to pay them for the privilege of working.

61.    The only source of monies received by Plaintiffs (and the class they seeks to represent) relative to their employment with Defendants came in the form of gratuities received directly from customers, a portion of which Plaintiffs and the FLSA Class Members were required to pay to Defendants.

62.    Although Plaintiffs and the FLSA Class Members are required to and do in fact frequently work more than forty (40) hours per workweek, they are not compensated at the FLSA mandated time-and-a-half rate for hours in excess of forty (40) per workweek. In fact, they receive no compensation whatsoever from Defendants and thus, Defendants violates the minimum wage requirement of FLSA. *See* 29 U.S.C. § 206.

63.    Defendants' method of paying Plaintiffs in violation of the FLSA was willful and was not based on a good faith and reasonable belief that its conduct complied with the FLSA. Defendants misclassified Plaintiffs with the sole intent to avoid paying her in accordance to the FLSA; the fees and fines described herein constitute unlawful "kickbacks" to the employer within the meaning of the FLSA, and Plaintiffs are entitled to restitution of such fines and fees.

64.    Plaintiffs and FLSA Class Members who worked at the Club performed precisely

the same job duties - dancing and entertaining at the Club.

65.     Plaintiffs and FLSA Class Members who worked at the Club during the applicable limitations period(s) were subject to the same work rules established by the Defendants as identified above.

66.     Plaintiffs and FLSA Class Members at the Club were subject to the terms and conditions of employment and the same degree of control, direction, supervision, promotion and investment imposed or performed by Defendants.

67.     Plaintiffs and FLSA Class Members at  the Club during the applicable limitations period(s) were subject to the same across-the-board, uniformly appliedcorporate policy mandated by Defendants.

68. Plaintiffs  and  the  FLSA  Class  Members  at the Club, during the applicable limitations period, were subject to the same fees and fines imposed by Defendants.

69.     As a result of Defendants' across-the-board, standard operating procedure of mischaracterizing dancers/entertainers as "independent contractors" and their consequent failure to pay any wages or compensation whatsoever, it is a certainly that numerous other current and former dancers and entertainers who worked at the Club during the applicable limitations period would elect to participate in this action if provided notice of same.

70.     Upon information and belief, more than one hundred (100) dancers and entertainers have worked at the Club during the three (3) to five (5) years prior to the filing of this action.

71.     Plaintiffs are "similarly situated" to the 29 U.S.C. § 216(b) class of persons they seeks to represent and will adequately represent the interests of the class.

72.     Plaintiffs have hired Counsel experienced in class actions and in collective actions under 29 U.S.C. § 216(b) who will adequately represent the class.

73.     Defendants failed to keep records of tips, gratuities and/or service charges paid to Plaintiffs or any other entertainer and failed to maintain and furnish wage statements to Plaintiffs.

74.     Federal law mandates that an employer is required to keep for three (3) years all payroll records and other records containing, among other things, the following information:

a.      The time of day and day of week on which the employees' work week begins;

b.      The regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the FLSA;

c.      An explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis;

d.      The amount and nature of each payment which, pursuant to section 7(e) of the FLSA, is excluded from the "regular rate";

e.      The hours worked each workday and total hours worked each workweek;

f.      The total daily or weekly straight time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation;

g.      The total premium for overtime hours. This amount excludes the straight-time earnings for overtime hours recorded under this section;

h.      The total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments;

i.      The dates, amounts, and nature of the items which make up the total additions and deductions;

j.      The total wages paid each pay period; and

k.      The date of payment and the pay period covered by payment.

29 C.F.R. 516.2, 516.5.

75.     Defendants have not complied with federal law and have failed to maintain such records with respect to Plaintiffs and the FLSA Class Members. Because Defendants' records are inaccurate and/or inadequate, Plaintiffs and the FLSA Class Members can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and produce sufficient evidence to show the amount and extent of their work "as a matter of a just and reasonable inference." *See, e.g., Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). Plaintiffs seek to put Defendants on notice that they intend to rely on *Anderson* to provide the extent of her unpaid work.

## B.     INDIVIDUAL LIABILITY UNDER THE FLSA

76.     In *Lamonica v. Safe Hurricane Shutters, Inc.*, the U.S. Court of Appeals for the Eleventh Circuit held that individuals can be liable for FLSA violations under an expansive interpretation of "employer" for directors and officers. *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299 (11th Cir. 2013). The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Fifth Circuit stated "[t]he dominant theme in the case law is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies." *Gray v. Powers*, 673 F.3d 352, 357 (5th Cir. 2012).

77.     Where an individual exercise "control over the nature and structure of the employment relationship," or "economic control" over the relationship, that individual is an employer within the meaning of the FLSA and is subject to liability. *Lambert v. Ackerley* 180 F.3d 997 (9th Cir. 1999) Factors related to "economic control," which included ownership interest, operational control of significant aspects of the day-to-day functions, the power to hire and fire employees, determine salaries, and the responsibility to maintain employment records.

*Gray*, 673 F.3d at 355 (citing *Williams v. Henagan*, 595 F.3d 610, 615 (5th Cir. 2010).

**V.   COLLECTIVE ACTION ALLEGATIONS**

78.    Plaintiffs hereby incorporate by reference and re-alleges each and every allegation set forth in each and every preceding paragraph as though fully set forth herein.

79.    Plaintiffs bring this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendants as exotic dancers/entertainers at any time during the three (3) years prior to the commencement of this action to present.

80.    Plaintiffs have actual knowledge that FLSA Class Members have also been denied overtime pay for hours worked over forty (40) hours per workweek and have been denied pay at the federally mandated minimum wage rate. That is, Plaintiffs worked with other dancers/entertainers at the Club. As such, they have firsthand personal knowledge of the same pay violations throughout Defendants' Club. Furthermore, other exotic dancers/entertainers at Defendants' Club have shared with their similar pay violation experiences as those described in this Complaint.

81.    Other employees similarly situated to Plaintiffs work or have worked at the Club but were not paid overtime at the rate of one and one-half (1 ½) their regular rate when those hours exceeded forty (40) hours per workweek. Furthermore, these sameemployees were denied pay at the federally mandated minimum wage rate.

82.    Although Defendants permitted and/or required the FLSA Class Members to work in excess of forty (40) hours per workweek, Defendants have denied them full compensation for their hours worked over forty (40). Defendants have also denied them full compensation at the federally mandated minimum wage rate.

83.     FLSA Class Members perform or have performed  the same or similar work as the Plaintiffs.

84.     FLSA Class Members regularly work or have worked in excess of forty (40) hours during a workweek.

85.     FLSA Class Members regularly work or have worked and did not receive minimum wage.

86.     FLSA Class Members are not exempt from receiving overtime and/or pay at the federally mandated minimum wage rate under the FLSA.

87.     As such, FLSA Class Members are similar to Plaintiffs in terms of job duties, pay structure, misclassification as independent contractors and/or the denial of overtime and minimum wage.

88.     Defendants' failure to pay overtime compensation and hours worked at the minimum wage rate required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of the FLSA Class Members.

89.     The experiences of the Plaintiffs, with respect to their pay, are typical of the experiences of the FLSA Class Members.

90.     The specific job titles or precise job responsibilities of each FLSA Class Member does not prevent collective treatment.

91.     All FLSA Class Members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty (40) during a workweek.

92.     All FLSA Class Members, irrespective of their particular job requirements, are entitled to compensation for hours worked at the federally mandated minimum wage rate.

93.     Although the exact number of damages may vary among FLSA Class Members,

the damages for the FLSA Class Members can be easily calculated by a simple formula. The claims of all FLSA Class Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by the Defendants that caused harm to all FLSA Class Members.

94.     As such, Plaintiffs brings their FLSA claims as a collective action on behalf of the following class:

> **All of Defendants' current and former exotic dancers/entertainers who worked at Jaguars located  in  Harlingen, Texas at any time starting three years before this Complaint was filed.**

## VI.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**FAILURE TO PAY MINIMUM WAGE PURSUANT TO FLSA, 29 U.S.C. § 206**

**(By Plaintiffs Individually and on Behalf of the Collective Against All Defendants)**

95.     Plaintiffs hereby incorporates by reference and re-alleges each and  every allegation set forth in each and every preceding paragraph as though fully set forth herein.

96.     Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

97.     Defendants operate an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), because it has employees engaged in commerce, and because its annual gross volume of sales made is more than five hundred thousand U.S. Dollars ($500,000).

98.     Defendants failed to pay Plaintiffs minimum wage in violation of 29 U.S.C. § 206.

99.     Based upon the conduct alleged herein, Defendants knowingly, intentionally and willfully violated the FLSA by not paying Plaintiffs the minimum wage under the FLSA.

100.     Throughout  the  relevant  period  of  this  lawsuit,  there  is  no  evidence  that

Defendants' conduct that gave rise to this action was in good faith and based on reasonable grounds. In fact, Defendants continued to violate the FLSA long after it learned that its misclassification scheme and compensation policies were illegal.

101.    Due to Defendants' FLSA violations, Plaintiffs are entitled to recover from Defendants, minimum wage compensation and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest,pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION

**FAILURE TO PAY OVERTIME WAGES PURSUANT TO FLSA, 29 U.S.C. § 207**

**(By Plaintiffs Individually and on Behalf of the Collective Against All Defendants)**

102.    Plaintiffs hereby incorporate by reference and re-alleges each and every allegation set forth in each and every preceding paragraph as though fully set forth herein.

103.    Each Defendant is an "employer" or "joint employer" of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(d).

104.    Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

105.    Defendants operate an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), because it has employees engaged in commerce, and because its annual gross volume of sales made is more than five hundred thousand U.S. Dollars ($500,000.00).

106.    Defendants failed to pay Plaintiffs the applicable overtime wage for each hour in excess of forty (40) during each workweek in which they worked in violation of 29 U.S.C. § 207.

107.    Based upon the conduct alleged herein, Defendants knowingly, intentionally and willfully violated the FLSA by not paying Plaintiffs the overtime wage required under the FLSA.

108.       Throughout the relevant period of this lawsuit, there is no evidence that

Defendants' conduct that gave rise to this action was in good faith and based on reasonable grounds. In fact, Defendants continued to violate the FLSA long after it learned that its misclassification scheme and compensation policies were unlawful.

109.    Due to Defendants' FLSA violations, Plaintiff is entitled to recover from Defendants, overtime wage compensation and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including  interest, pursuant to 29 U.S.C. § 216(b).

### THIRD CAUSE OF ACTION

**UNLAWFUL TAKING OF TIPS IN VIOLATION OF THE FLSA, 29 U.S.C. § 203**

**(By Plaintiffs Individually and on Behalf of the Collective Against All Defendants)**

110.    Plaintiffs hereby incorporate by reference and re-alleges each and every allegation set forth in each and every preceding paragraph as though fully set forth herein.

111.    Plaintiffs customarily and regularly received more than thirty U.S. Dollars ($30.00) a month in tips and therefore is a tipped employee as defined in the FLSA, 29 U.S.C. § 203(t), *see also* 29 C.F.R. § 531.50.

112.    At all relevant times, Defendants were "employer(s)" or "joint employer(s)" of Plaintiffs within the meaning of the FLSA, 29 U.S.C. § 203(d).

113.    Defendants are engaged in "commerce" and/or in the production of "goods" for "commerce" as those terms are defined in the FLSA.

114.    Defendants operate an enterprise engaged  in commerce within the meaning for the FLSA, 29 U.S.C. § 203(s)(1), because it has employees engaged in  commerce, and because its annual gross volume of sales made is more than five hundred thousand U.S. Dollars ($500,000).

115.    Under TIPA:

[a]n employer may not keep tips received by its employees for any

purpose including allowing managers or supervisors to keep any portion
of employees' tips, regardless of whether or not it takes a tip credit.

29 U.S.C. § 203.

116.    Defendants kept a portion of tips paid to Plaintiffs by Defendants' customers in the
form of fees, fines, mandatory charges and other payments to management, house moms, disc
jockeys, and floor men in violation of TIPA.

117.    Defendants required Plaintiffs to participate in an illegal tip pool, which included
employees who do not customarily and regularly receive tips, and do not have more than a *de
minimis*, if any, interaction with customer leaving the tips (such as the Club DJ, security, and
management). *See* U.S. Dep't of Labor, Wage and Hour Division, "Fact Sheet # 15: Tipped
employees under the Fair Labor Standards Act (FLSA)."

118.    The contribution Defendants required Plaintiffs to make after each shift was
arbitrary and capricious and distribution was not agreed to by Plaintiffs or other dancers; rather, it
was imposed upon Plaintiffs and other dancers.

119.    By requiring Plaintiffs to pool their tips with Club management, including the
individual Defendants named herein, Defendants "retained" a portion of the tips received by
Plaintiffs in violation of the FLSA.

120.    Defendants did not make any effort, let alone a "good faith" effort, to  comply with
the FLSA as it relates to compensation owed to Plaintiffs.

121.    At the time of their illegal conduct, Defendants knew or showed  reckless disregard
that the tip-pool which they required Plaintiffs to contribute included non-tipped employees and,
therefore, was statutorily illegal. In spite of this, Defendants willfully failed andrefused to pay
Plaintiffs the proper amount of the tips to which they were entitled.

122.    Defendants' willful failure and refusal to pay Plaintiffs the tips they earned violates

the FLSA.

123.    Defendants   kept a portion of tips paid to Plaintiffs by Defendants' customers in the form of fees, fines, mandatory charges and other payments to management, house moms, disc jockeys, and door men in violation of TIPA.

124.    As a result of the acts and omissions of the Defendants as alleged herein, and pursuant to 29 U.S.C. §§ 216(b) and 260, Plaintiffs are entitled to damages in the form of all misappropriated tips, plus interest; as liquated damages, an amount equal to all misappropriated tips, mandatory attorneys' fees, costs, and expenses.

## <u>FOURTH CAUSE OF ACTION</u>

### ILLEGAL KICKBACKS, 29 C.F.R. § 531.35

**(By Plaintiffs Individually and on Behalf of the Collective Against All Defendants)**

125.    Plaintiffs hereby incorporate by reference and re-alleges each and every allegation set forth in each and every preceding paragraph as though fully set forth herein.

126.    Defendants required Plaintiffs to pay monetary fees to Defendants and other JAGUARS employees who did not work in positions that are customarily and regularly tipped, in violation of 29 U.S.C. § 203(m).

127.    Defendants' requirement that Plaintiffs pay fees to Defendants and other JAGUARS employees violated the "free and clear" requirement of 29 C.F.R. § 531.35.

128.    Because Defendants violated the "free and clear" requirement of 29 C.F.R. § 531.35 as alleged above, they were not entitled to utilize the FLSA's tip-credit provision withrespect to Plaintiffs' wages.

129.    Because Defendants violated the "free and clear" requirement of 29 C.F.R. § 531.35, all monetary fees imposed on Plaintiffs are classified as illegal kickbacks.

130.    Plaintiffs are entitled to recover from Defendants all fees that Defendants required Plaintiffs to pay in order to work at JAGUARS, involving but not limited tohouse fees and tip

sharing.

## FIFTH CAUSE OF ACTION

### FORCED TIPPING, 29 C.F.R. § 531.35

### (By Plaintiffs Individually and on Behalf of the Collective Against All Defendants)

131.     Plaintiffs hereby incorporate by reference and re-alleges each and every allegation set forth in each and every preceding paragraph as though fully set forth herein.

132.     Defendants required Plaintiffs to pay monetary fees to other JAGUARS employees who did not work in positions that are customarily and regularly tipped, in violation of 29 U.S.C. § 203(m).

133.     Defendants' requirement that Plaintiffs pay fees to other JAGUARS employees violated the "free and clear" requirement of 29 C.F.R. § 531.35.

134.     Because Defendants violated the "free and clear" requirement of 29 C.F.R. § 531.35 as alleged above, they were not entitled to utilize the FLSA's tip-credit provision withrespect to Plaintiffs' wages.

135.     Plaintiffs are entitled to recover from Defendants all fees that Defendants required Plaintiffs to pay other employees in order to work at the Club, involving but not limited to forced tip sharing.

## DEMAND FOR JURY TRIAL

136.     Plaintiffs hereby demand a trial by jury for all such triable claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request of this Court the following relief:

1.   For compensatory damages according to proof at trial of at least $100,000;

2.   For special damages according to proof at trial;

3.   For restitution of unpaid monies;

4.   For attorneys' fees;

5.  For costs of suit incurred herein;

6.  For statutory penalties;

7.  For civil penalties;

8.  For pre-judgment interest;

9.  For post-judgement interest;

10. For general damages in an amount to be proven at trial;

11. For such other and further relief as the tribunal may deem just and proper.


Dated: July 9, 2021                                Respectfully Submitted,

                                                   **ELLZEY & ASSOCIATES,  PLLC**

                                                   */s/ Jarrett L. Ellzey*
                                                   Jarrett L. Ellzey
                                                   Texas Bar No. 24040864
                                                   Leigh Montgomery
                                                   Texas Bar No. 24052214
                                                   1105 Milford Street
                                                   Houston, Texas 77066
                                                   Telephone: (713) 554-2377
                                                   Fax: (888) 276-3455
                                                   jarrett@ellzeylaw.com
                                                   leigh@ellzeylaw.com

                                                   ***Attorneys for Plaintiffs***